IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HIDDEN VALUES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-1917-L** |
| | § | |
| **JESSICA WADE, ANTHONY WADE,** | § | |
| **and BETTER TOGETHER LLC**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion to Dismiss Counts I, II, III, V, VI, VII, and VIII of the

Defendants' Counterclaim, filed October 27, 2011, by Plaintiff Hidden Values, Inc. ("HVI"). After

carefully reviewing the motions, briefing, pleadings, and applicable law, the court **grants in part**

**and denies in part** the Motion to Dismiss Counts I, II, III, V, VI, VII, and VIII of the Defendants'

Counterclaim.  As explained herein, the court also moves *sua sponte* for dismissal of certain claims

asserted by Jessica Wade and Better Together LLC.

**I.      Factual and Procedural Background**

HVI brought this lawsuit against Jessica Wade ("Wade"), Anthony Wade (collectively, the

"Wades"), and Better Together LLC ("Better Together") for alleged trademark violations, trade dress

infringement, unfair competition, and breach of contract arising out of Defendants' allegedly

unlawful publication of an advertising directory for children's products and services.  HVI's motion

to dismiss goes to counterclaims and third party claims asserted by Jessica Wade and Better Together

against HVI and third party defendants James Crofford Jr., James Crofford III, and Joshua Crofford

(collectively, "the Croffords"), who are alleged to be officers and directors of HVI.[1]  Although HVI alone moved to dismiss Wade's and Better Together's claims, the court construes the motion as one for dismissal by HVI and the Croffords since it seeks dismissal of claims asserted against both HVI and the Croffords.

HVI is in the business of creating and publishing advertising directories, either directly or through licensees.  One such advertising directory, "Kids' Directory®," is published in various markets in the United States.  In February 2009, the Wades entered a License and Publishing Agreement ("Agreement") with HVI that gave the Wades a license to publish a Kids' Directory in the North Georgia market area known as the North Georgia Kids' Directory.  HVI contends that the Wades breached the Agreement by starting a competing directory that copies the look and feel of a Kids' Directory and includes advertisers who were advertising in the North Georgia Kids' Directory. HVI further contends that the Wades and Better Together[2] conspired together to start a competing directory, and the Wades continued to hold themselves out to the public as being associated with HVI and North Georgia Kids' Directory® after the expiration of their license while they completed

---

[1] As noted herein, Wade and Better Together refer, at the beginning of their pleadings, to HVI as a "Counter-Defendant" and the individual Crofford defendants as "Cross-Defendant[s]."  Orig. Answer, Counterclaim, and Cross-Claims 11, ¶¶ 3-6.  Thereafter, they lump together and refer to HVI and the Croffords collectively as "Counter-Defendants."  They also refer to their claims against HVI and the Croffords as counterclaims and cross-claims. Their improper and inconsistent designation of parties and claims has created unnecessary confusion in ruling on the motion to dismiss before the court.  To ensure that all of the parties are properly referred to by other parties, the designations that follow should be used by the parties moving forward to avoid further confusion.  The "plaintiff" is the person or entity who brings the lawsuit; here, the plaintiff is HVI.  The "defendant" is the person or entity against whom the lawsuit is brought.  The defendants in this case include the Wades and Better Together.  A "third-party defendant" is a party added to the lawsuit by the initial defendant.  Thus, the Croffords are "third-party defendants" and the claims asserted against them by Wade and Better Together are "third-party claims."  A "counterclaimant" is a party that makes a claim against the opposing party after the original claim has been made.  Wade's and Better Together's claims against HVI are therefore "counterclaims," and Wade and Better Together are referred to collectively as "counterclaimants."

[2] Better Together's role in this case is not entirely clear from the parties' pleadings, but it appears that it may be an entity that was formed by Jessica Wade after the license agreement at issue in this case was entered, since it is not a party to the license agreement at issue in this case.  Wade and Better Together refer to themselves collectively as "Better Together" in their joint Original Answer, Counterclaim, and Cross-Claims.

**Memorandum Opinion and Order – Page 2**

plans to publish their competing directory.  In addition to money damages, HVI seeks a preliminary and permanent injunction enjoining the Wades's and Better Together's alleged wrongful use of HVI's Kids' Directory mark and trade dress and continuing violations of the Wades's post-contract obligations under the Agreement.

Wade and Better Together filed a joint Original Answer in which they asserted the following claims against HVI and the Croffords: Count I - violation of the Texas Consumer Protection Deceptive Trade Practices Act ("DTPA");  Count II - fraud; Count III - negligent misrepresentation; Count IV - declaratory judgment; Count V - cancellation of U.S. Reg. No. 3,778,146 (trademark cancellation claim); Count VI - money had and received; Count VII - conspiracy; and Count VIII - alter ego.  The essence of their claims is that they did not get what they bargained for in the Kids' Directory mark and that they were induced by HVI's and the Croffords' alleged misrepresentations regarding the nature of the business opportunities and franchises offered by HVI through its website. Wade and Better Together further contend that HVI and the Croffords failed to disclose certain information, including required disclosures under the Federal Trade Commission Act ("FTCA") applicable to franchises and the Texas Business Opportunity Act ("TBOA").  HVI moved to dismiss all of Wade's and Better Together's claims, except their declaratory judgment claim, under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.   Applicable Standards

### A.   Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(internal citations omitted).  While a complaint need not contain detailed factual allegations, it must

set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a

complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks,

citations, and footnote omitted).

 In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm*

*Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area*

*Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197

F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the

complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss

are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d

429, 431 (7th Cir. 1993)).

**Memorandum Opinion and Order – Page 4**

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

**B**.     **Standard for Rule 9(b) - Heightened Standard for Pleading Fraud**

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.,* No. 3:10-CV-1747-B, 2011 U.S. Dist. LEXIS 65912, at *7, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how'

to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003).

### III.    Analysis

#### A.    Counts I, II, III, VII, and VIII - DTPA, Fraud, Negligent Misrepresentation, Money Had and Received, Conspiracy, and Alter Ego (Better Together)

HVI contends that the claims asserted by Better Together should be dismissed because it was not a party to the Agreement at issue, and as a result, it could not have relied on any disclosures or omissions by HVI or the Croffords in entering the Agreement. The court agrees. No explanation was provided in response regarding Better Together's role in this case with regard to the claims asserted by Wade and Better Together. Accordingly, HVI is entitled to dismissal of all claims by Better Together except for the trademark cancellation claim discussed herein. The court therefore **grants** HVI's motion to dismiss the following claims as to Better Together: Count I - DTPA; Count II - fraud; Count III - negligent misrepresentation; Count VI - money had and received; Count VII - conspiracy; and Count VIII - alter ego. Except for the trademark cancellation claim discussed separately herein, the court's remaining analysis focuses on whether these same claims asserted by Wade can survive dismissal. Although HVI did not move for dismissal of Better Together's declaratory judgment claim, the court *sua sponte* moves for dismissal of this claim[3] by Better Together based on the same reasoning, that is, since the declaratory judgment claim is based on the Agreement and related unfulfilled promises, it is subject to dismissal with regard to Better Together, because Better Together is not a party to the Agreement and therefore could not have relied on any

---

[3] A district court is authorized to *sua sponte* consider the sufficiency of a complaint and dismiss an action or claim for failure to state a claim under Rule 12(b)(6) after a party is given notice and an opportunity to respond. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007).

disclosures or omissions by HVI or the Croffords in entering the Agreement as alleged in Wade's and Better Together's pleadings.

**B.      Sufficiency of Pleadings Under Rule 9(b) as to Counts I, II, III, VII, and VIII - DTPA, Fraud, Negligent Misrepresentation, Conspiracy, and Alter Ego (Wade)**

HVI contends that Wade's claims for DTPA violations, fraud, negligent misrepresentation, conspiracy, and alter ego should be dismissed for failure to meet Rule 9(b)'s heightened pleading standard. HVI also argues, for various reasons explained herein, that the claims fail to satisfy Rule 12(b)(6). Wade acknowledges that her DTPA, negligent misrepresentation, and conspiracy claims are governed by Rule 9(b) since they are premised on the same set of facts as her fraud claim. Wade nevertheless contends that her allegations with regard to these claims satisfy Rules 9(b) and 12(b)(6). She further asserts that her alter ego claim does not require a showing of actual fraud, and the parties dispute whether section 21.223 of the Texas Business Organizations Code[4] applies to her alter ego claim, making it subject to Rule 9(b).

Wade's pleadings with regard to each of the aforementioned claims are based on the same operative facts. The heightened pleading standard of Rule 9(b) therefore applies to each of these claims, including Wade's alter ego claim, because regardless of the applicability of section 21.223, this claim requires proof that the Croffords used HVI to perpetrate a fraud as alleged by Wade in her pleadings. *See Shandong Yinguang Chemical Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029,

---

[4] Section 21.223 is the amended, codified version of article 2.21 of the Texas Business Corporation Act and was adopted by the Texas legislature to limit a shareholder's personal liability for the contractually related obligations of a corporation and requires a showing that "actual fraud," rather than some lower threshold of wrongful conduct, has been perpetrated through use of the corporate form for the direct personal benefit of the corporation's shareholder that is sought to be charged with liability. *See* Tex. Bus. Orgs. Code Ann. § 21.223 (West Supp. 2011).

**Memorandum Opinion and Order – Page 7**

1035 (5th Cir. 2010).  The court therefore considers whether Wade has satisfied Rule 9(b)'s pleading standard as to "the who, what, when, where, and how."

      **1.**      **Who**

When multiple defendants are alleged to have committed fraudulent acts, a party claiming fraud "must plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud." *Coates v. Heartland Wireless Comms., Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) (citations and quotation omitted).  Here, HVI contends, and the court agrees, that Wade's pleadings (and response to HVI's motion to dismiss) lump together and refer to HVI and the three individual Crofford defendants collectively as "Counter-Defendants" and "they" without distinguishing which entity or persons committed the various alleged fraudulent conduct.  To make matters more confusing, Wade's pleadings state that HVI is the only "Counter-Defendant," whereas she refers to the individual Crofford defendants as "Cross-Defendant[s]."  *See* Orig. Answer, Counterclaim, and Cross-Claims 11, ¶¶ 3-6.  As a result, it is not clear who is included in the "Counter-Defendants" or which of the "Counter-Defendants" Wade's claims are directed towards.  Wade does, however, sufficiently specify with regard to her alter ego claim that the "Individual Counter-Defendants," presumably the Crofford defendants, used HVI to perpetrate a fraud.  The court therefore concludes that, except for her alter ego claim, Wade's pleadings do not satisfy Rule 9(b)'s "who" requirement, because she does not specify who made the alleged misrepresentations or who failed to make necessary disclosures.  These claims are therefore subject to dismissal if not cured by amendment.

2.     **What**

HVI's motion does not focus in great detail on the inadequacies of Wade's allegations with

regard  to the "what" requirement and acknowledges that Wade's pleadings contain allegations

regarding certain representations and omissions.   Wade, nevertheless, points to the following

allegations in her pleadings regarding HVI's and the Croffords' alleged wrongful conduct:

> 10.   Counter-Defendants sell business opportunities and franchises in the
> directory publishing business. The opportunities certainly sound attractive. On their
> website, Counter-Defendants claim or have claimed that Hidden Values "makes
> available all of the information, contacts, and materials you will need to begin your
> own successful publishing operation," including a "proprietary operating package"
> with a confidential operating manual, specific information regarding media, selling,
> billing and distribution methods, master forms and a list of prospective advertisers
>   "[b]asically, we have available for you *all* the information, contacts and material
> you need to begin your own successful business" . . . With this and a small
> investment, minimal capital for start-up operations, and "no employees," they have
> touted that "[y]our business will be simple to operate, effective for advertisers, and
> very profitable", even the first month of operation, and with earnings claims of up to
> $5,000 for a 16-page publication or up to $10,000 for a larger publication. They have
> further emphasized the "ease" of the operation after the initial sale of an ad: "our ads
> can be compared to an oil well.  Once you sell the ad, the ad continues to do your
> work for you." The Counter-Defendants lead prospective customers . . . to believe
> that this is possible because Hidden Values obtains "volume pricing" on directory
> printing and there are no "additional" or hidden fees in operating one of their
> publications. They also promote the apparent "success" of other publishers as
> examples of what a prospective customer can expect, all under the "KIDS'
> DIRECTORY" mark which they tout as well-known and highly regarded through
> long use in many markets across the country.
>
> 11.   The Counter-Defendants do not disclose the fact that other publishers
> pay drastically different print charges, and/or operate under different arrangements.
> They do not disclose the fact that some of their most prominent and successful
> franchisees do not have to pay anything remotely close to the printing costs the
> prospective franchisees will be charged, and that it will never be possible to attain
> their levels of success with the prices Hidden Values will charge, which are typically
> double or more of the actual market rate. They do not disclose the extent of disputes
> regarding their "Kids Directory" mark, the fact that it is so weak that during one
> application it was determined by the United States Patent and Trademark Office to
> be a generic term and not protectable as a mark at all, or the effect of its inconsistent

use across markets. They do not explain the impact of their control over printer selection, printing costs, printing quality, and delivery times. They especially do not disclose the fact that many, many Hidden Values franchisees have failed.

12.  Mrs. Wade signed an agreement with Hidden Values on or about February 9, 2009, replacing an agreement between Hidden Values and a previous franchisee which was less than a year old. Before entering into the agreement, she and Better Together LLC were given none of the disclosures mandated under the Texas Business Opportunity Act or the Federal Trade Commission Rule on Franchising, and which the Texas legislature and the Federal Trade Commission have long deemed necessary to allow prospective purchasers to receive all the facts before they make these significant investments. Had Ms. Wade and Better Together LLC known the true facts, they would never have entered into a relationship with the Defendants.

13.  Hidden Values' promises were not fulfilled. Better Together received an old notebook with outdated forms, purported "leads" which were inadequate, impractical and useless, and little or nothing else. Ms. Wade learned how to operate her business from her own business experience, hard work, creative marketing ideas she thought of and initiated herself, and independent sales calls on potential advertisers she identified, relying on she [sic] own personal initiative and relying on and further developing her own personal reputation in connection with her magazine. Better Together never received from the Counter-Defendants meaningful, confidential or other "material and significant" information sufficient to support a restrictive covenant. The only thing they did provide was printing; but Better Together experienced delivery problems with the printing, which the Counter-Defendants refused to resolve. Better Together later realized that far from receiving "volume pricing," their printing costs were approximately twice as high as the actual market rate   which would make it virtually impossible to make profits at the levels the Counter-Defendants had touted, or any profit at all.

Orig. Answer, Counterclaim, and Cross-Claims 12-14, ¶¶ 10-13.

### a.      Claims Based on Alleged FTCA and TBOA Violations

Wade also contends that the "what" requirement is satisfied by her pleadings regarding the alleged failure to make disclosures under the FTCA and TBOA.  This issue is not addressed in HVI's motion or reply.  The court nevertheless raises it *sua sponte*.

Wade identifies specific nondisclosures in paragraph 11 of her pleadings. These alleged nondisclosures, however, appear to be distinct from those that she contends in paragraphs 12 and 17(c) should have been made under the FTCA and TBOA. Other than her allegation in paragraph 17(c) that HVI and the Croffords failed to provide, under the FTCA, the number and percentage of existing franchisees who have achieved the claimed earning results, the court was unable to find any other reference to a specific violation of the FTCA and TBOA in Wade's pleadings. Instead, she simply asserts in conclusory fashion that unspecified mandatory disclosures were not made. Accordingly, Wade's allegations in this regard are not sufficiently specific to satisfy either Rule 12(b)(6) or 9(b)'s "what" requirement and are subject to dismissal if not cured by amendment.

Moreover, courts in this and other circuits have recognized that there is no private cause of action for violations of the FTCA, 15 U.S.C. §§ 41 *et seq.* As a result, Wade cannot rely on alleged violations of the FTCA to support her state claims and the court *sua sponte* moves for their dismissal. *See Fulton v. Hecht*, 580 F.2d 1243, 1248-9 n.2 (5th Cir. 1978); see also *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996) (same); *R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n*, 708 F.2d 570, 574-75 n.5 (11th Cir. 1983) (same); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 and 1001-02 (D.C. Cir. 1973); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-81 (9th Cir. 1973) (same). Thus, all of Wade's claims that are based on FTCA violations fail to state a claim upon which relief can be granted and should be dismissed since amendment would be futile.

**b.      Sufficiency of Wade's Conspiracy Claim**

HVI also targets specifically Wade's conspiracy claim and contends that Wade's pleadings fail to specify the alleged conduct or course of action and instead merely recite the elements for

conspiracy.   Conspiracy is not actionable without an underlying tort such as fraud.  *See Allstate Ins. Co. v. Receivable Fin., Inc.*, 501 F.3d 398, 414 (5th Cir. 2007) (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."). Except for the other deficiencies noted *supra* and *infra* in this section that will need to be cured by amendment, the court determines that paragraphs 10 through 13 of Wade's pleadings, when viewed together with paragraphs 59 through 62 that deal specifically with conspiracy, contain sufficient facts regarding alleged fraudulent conduct to support a claim of conspiracy at this stage. Accordingly, HVI is not entitled to dismissal of Wade's conspiracy claim at this juncture on this ground.

### 3.    When, Where, and How

HVI contends that Wade has failed to specify the place and time the alleged fraudulent statements or omissions were made and how the statements or omissions are fraudulent.  Wade responds that the statements or omissions by "Counter-Defendants" are fraudulent because they failed to provide confidential and other significant information and volume pricing as originally promised or required.  Wade contends that this fraudulent conduct occurred before the parties executed the February 9, 2009 Agreement.

The court concludes that Wade's pleadings satisfy Rule 9(b)'s "how" requirement but are not sufficiently specific as to when the alleged fraudulent conduct took place, that is, when did Wade view what she contends were misrepresentations on HVI's website, when did other misrepresentations or omissions, if any, occur and how far in advance of the Agreement does she Together contend that other disclosures should have been provided.  Rule 9(b)'s "where"

**Memorandum Opinion and Order – Page 12**

requirement is satisfied in part by Wade's contention that misrepresentations were included on HVI's website, but it is unclear from her pleadings if she contends that other misrepresentations or omissions also occurred at the place where the Agreement was executed, other than HVI's website. Accordingly, Wade's pleadings do not satisfy Rule 9(b)'s "when" and "where" standard of pleading and are subject to dismissal if not cured by amendment.

### C.   HVI's Additional Grounds for Seeking Dismissal of Wade's Fraud and Alter Ego Claims

#### 1.   Count II Fraud - Duty to Disclose (Wade)

HVI contends that Wade does not allege any facts to support her contention that HVI and the Croffords had a duty to disclose the information she now claims should have been provided. Wade does not specifically address HVI's duty to disclose argument. She does, however, cite *Bradford v. Vento*, 48 S.W.3d 749, 755-56 (Tex. 2001), for the proposition that a claim of fraud can be based on a defendant's concealment or failure to disclose material facts within its knowledge if the defendant knows that the plaintiff is ignorant of such facts and does not have an equal opportunity to discover the truth, and the nondisclosure is intended to induce the plaintiff to take some action.

The latter statement by Wade does not accurately depict the Texas Supreme Court's holding in *Bradford*. The court in *Bradford* did not actually hold that a duty to disclose exists in Texas absent a confidential or fiduciary relationship; rather, it noted that several Texas courts of appeals have held that "a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *Bradford*, 48 S.W. 3d at 755-56. The court further noted that section 551 of the Restatement (Second) of Torts "also recognizes a general duty to disclose facts in a commercial setting. In such cases, a party does not

make an affirmative misrepresentation, but what is said is misleading because other facts are not

disclosed." Without deciding the issue or expressly overruling the prior court of appeals cases, the

*Bradford* court stated, "*[w]e have never adopted section 551.*" *Id*. (emphasis added); *see also*

*SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 352-53 (Tex. 1995) ("Section 551 of the

RESTATEMENT (SECOND) OF TORTS recognizes a general duty to disclose facts in a

commercial setting, which could encompass the duty Doe seeks in this case. . . . This Court has cited

section 551 only once, but has never embraced it as a rule of law in Texas.") (internal citations

omitted). The *Bradford* court concluded that, "even if we were to adopt such a general duty,"

Bradford's fraud claim still fails, because "there is no evidence that Bradford knew either that Vento

was ignorant of the lease terms or that he did not have an equal opportunity to discover them . . . In

addition, there is no evidence that Bradford knew that Vento had not obtained or could not obtain

the information from other sources." *Bradford*, 48 S.W. 3d at 756.

As noted by the Fifth Circuit in *United Teacher Associates Insurance Company v. Union*

*Labor Life Insurance Company*, 414 F.3d 558 (5th Cir. 2005), the issue of whether a general duty

of disclosure exists in Texas remains unresolved after *Bradford*:

> A reasonable jurist might well conclude, certainly after *Bradford*, that a duty
> to disclose exists in Texas only in the context of a confidential or fiduciary
> relationship. This court has so held in [*Coburn Supply Co., Inc. v. Kohler Co.*, 342
> F.3d 372 (5th Cir. 2003)], the only Fifth Circuit case that discusses the relevant
> portion of *Bradford*. However, apart from *Coburn*, it would be fair to say that courts
> after *Bradford* (including this court) have not gotten the message, but have instead
> continued to find that a duty to disclose can exist in Texas absent a confidential or
> fiduciary relationship.

*Id*. at 566 (external citations omitted). After noting the unresolved confusion, the Fifth Circuit went

on to conclude, "Fortunately, we need not decide whether a duty to disclose exists in Texas absent

a confidential or fiduciary relationship because, even if such a duty did exist . . . United Teacher's fraud claim nevertheless fails because it cannot prove fraudulent intent." *Id*.

As a result of the unresolved confusion, district courts have been left to determine the proper meaning of *Bradford*. Two cases out of the southern district of Texas have since concluded that the holding in *Bradford* did not foreclose the existence of a duty to disclose absent a confidential or fiduciary relationship, and absent an equal opportunity to discover withheld information, a duty to disclose might exist. *See Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 651 (S.D. Tex. 2009); *NuVasive, Inc. v. Renaissance Surgical Ctr. N., L.P.*, No. 11-CV-2897, ___ F. Supp. 2d ___, 2012 WL 531129, at *8 (S.D. Tex. Feb. 17, 2012). This court agrees with these courts' reading of *Bradford,* as the court in *Bradford* did not hold that such a duty to disclose cannot exist, and it did not overrule prior Texas case law. *See id; see also Bradford*, 414 F.3d at 555-56 (citing *Hoggett v. Brown*, 971 S.W.2d 472, 487 88 (Tex. App. Houston [14th Dist.] 1997, no writ) ( [A] "a duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; (4) when one makes a partial disclosure and conveys a false impression."). The court therefore concludes that under Texas law, a duty to disclose can exist absent a fiduciary relationship when a party does not have an equal opportunity to discover material information withheld. Thus, the issue for purposes of this motion is whether Wade has alleged sufficiently such a duty here.

Wade identifies the following information in her responsive brief as examples of what she contends HVI and the Croffords failed to disclose that she had no way of discovering: "(1) the

disparity in print charges between other franchisee-publishers; (2) the disputes regarding the weakness of the mark 'Kids Directory'; (3) the 'impact of the control over printer selection, printing costs, printing quality, and delivery times'; (4) or statistics on failure rates of the other franchisees for Hidden Values." Defs.' Resp. 8. Wade's pleadings regarding fraud, however, merely state in conclusory fashion that HVI and the Croffords failed to make unspecified disclosures regarding facts that she could not have discovered:

> Counter-Defendants further *had a duty to disclose but concealed from and/or failed to disclose certain material facts to Better Together, including but not limited to those required to be disclosed under the Texas Business Opportunity Act and the Rule on Franchising, when Counter-Defendants knew that Better Together did not know such facts and/or did not have an equal opportunity to discover such facts.* Counter-Defendants created a substantially false impression [regarding] the nature of the business relationship.

Orig. Answer, Counterclaim, and Cross-Claims 17-18, ¶ 28 (emphasis added). Wade's pleadings fail to specify what information was withheld, under the TBOA or otherwise, and which of the nondisclosures involved material facts that she relied on in entering the Agreement *that otherwise could not have been discovered*. The court therefore concludes that Wade's pleadings, as to the duty of disclosure, fail to satisfy the pleading requirements for Rule 12(b)(6) and Rule 9(b) and are subject to dismissal if not cured by amendment.

### 2. Count VIII - Alter Ego (Wade)

HVI further contends that Wade has not pled fraud of the type and nature required for alter ego claims under section 21.223 of the Texas Business Organizations Code. HVI cites *SSP Partners v. Gladstrong Investments (USA) Corporation*, 275 S.W.3d 444, 455 (Tex. 2008), for the proposition that, to hold a person individually responsible for a corporation's obligations requires evidence of abuse or what the Texas Supreme Court refers to as "injustice and inequity" resulting from a party's

"fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *See id.*; *see also* HVI Mot. 8.

Wade contends that her allegations regarding alter ego are based on the Croffords' use of HVI as a business conduit and therefore do not require an actual showing of fraud. Wade further contends that it would be improper to apply the alter ego standard under section 21.223 because the claims underlying her alter ego theory are based on torts rather than a contractual obligation. For support, she cites *Kingston v. Helm*, 82 S.W.3d 755, 766 (Tex. App.  Corpus Christi 2002, pet denied). HVI counters that *Kingston* is inapplicable because it involved a corporate officer's individual liability based on agency law, not veil piercing. HVI further contends that section 21.223, by its express terms, is not limited to contractual claims but instead applies to "any contractual obligation of the corporation *or any matter relating to or arising from the obligation*." HVI Reply 6 (quoting section 21.223).

An alter ego theory is a remedy, not a claim per se, and is one of several ways to pierce the corporate veil under Texas law in order to assign liability for an underlying cause of action. *In re Grothues*, 226 F.3d 334, 337-38 (5th Cir. 2000). The court agrees that *Kingston* is distinguishable and Wade's alter ego theory is subject to section 21.223, because it is based on claims that relate to and would not arise but for the franchise Agreement entered into by the parties. Moreover, Wade's pleadings are based on the alleged perpetration of "actual fraud." Thus, Wade's contention that she is not required to prove fraud is without merit. As noted above, however, the court concludes that Wade's allegations of fraudulent conduct in paragraphs 10 through 13 are sufficient, except to the extent otherwise noted, for purposes of Rule 9(b) when viewed together with her specific allegations in paragraphs 63 through 69 regarding alter ego. Accordingly, HVI is not entitled to dismissal of

Wade's alter ego theory or her claims based on alter ego at this time and its motion on this specific ground is **denied**.

D.      **Count VI: Money Had and Received (Wade)**

HVI contends that Wade failed to allege any facts to support her money had and received claim. Wade counters that facts supporting this claim are included in paragraph 13 of her pleadings. Wade further asserts in her responsive brief that she paid "Counter-Defendants" money in reliance on their representations that they would provide all materials needed to run a franchise, including confidential materials. Wade contends specifically that she is entitled to a refund for money she paid for unreasonable printing costs, because "Counter-Defendants" represented that printing would be provided at discounted rates and refused to resolve delivery problems experienced by Wade. Regardless of whether Wade has pleaded facts to support her claim as asserted by HVI, the court determines that this claim fails as a matter of law and therefore *sua sponte* moves for dismissal of the claim based on the reasoning that follows.

In Texas, a claim for money had and received is an equitable or quasi-contract theory of relief that is available only when there is no contract between the parties that covers the subject matter of the dispute. *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 815 (Tex. App.   Dallas 2012, no pet.). Wade acknowledges that she entered into an Agreement with HVI that governs the parties' franchise relationship. Orig. Answer, Counterclaim, and Cross-Claims 13, ¶ 12. Moreover, the Agreement sets forth their respective obligations with regard to the franchise, including but not limited to HVI's obligations with regard to printing. *See* Exh. 1 to HVI Complaint (Doc. 1-1). Because there is a contract that covers the subject matter of Wade's claim for money had and received, the claim fails as a matter of law and attempts to replead it would be futile. The court

therefore concludes *sua sponte* that this claim is subject to dismissal.  Because the court has determined that Wade's claim for money had and received is subject to dismissal on other grounds, it does not reach the parties' arguments regarding the sufficiency of Wade's pleadings necessary to state a claim for money had and received.

### E.    Count V: Trademark Cancellation Claim (Wade and Better Together)

The Lanham Act permits cancellation of the registration of a mark on the principal register by anyone "who believes that he is or will be damaged . . . by the registration." 15 U.S.C.A. § 1064. The party seeking to cancel the registration of a mark must prove two elements: "(1) that it has standing; and (2) that there are valid grounds for canceling the registration." *Cunningham v. Laser Golf Corp*., 222 F.3d 943, 945 (Fed. Cir. 2000).

HVI focuses on the second of these two elements and contends that Wade's and Better Together's pleadings are insufficient as to the ground that they seek cancellation of the "KIDS DIRECTORY" mark.  A district court can order cancellation of an incontestible trademark on the basis of seven enumerated grounds set forth in 15 U.S.C. § 1064. *See* 15 U.S.C. § 1119.  One such ground is that the trademark is generic or has become the "generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service." 15 U.S.C. § 1064(3).  The test for determining whether the registered mark is or has become generic is the "primary significance of the registered mark to the relevant public rather than purchaser motivation." *Id.*  A generic term refers to:

> the name of a particular genus or class of which an individual article or service is but a member. A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product. . . . Such terms as aspirin and cellophane have been held generic and therefore unprotectable as trademarks.

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010) (quotation and citation omitted).  Factors considered to determine if a mark is generic include: "uncontested generic use by competitors, generic use by the plaintiff, dictionary definitions, media usage, testimony of persons in the trade and consumer surveys." *See March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, 162 F. Supp. 2d 560, 568-569 (N.D. Tex. 2001) (citing McCarthy on Trademarks and Unfair Competition § 12:13 (4th ed. 2010)); *DVH Co., Inc. v. Bropfs Corp.*, No. 3:06CV2084-P, 2007 WL 3284324, at *3 (N.D. Tex. Nov. 6, 2007); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-CV-1397-P, 2003 WL 251318, at *3 (N.D. Tex. Feb. 3, 2003).

HVI contends that Wade and Better Together should have included allegations of evidence in their pleadings to support their contention that the "KIDS DIRECTORY" is generic.  The court disagrees.  It is true that, as the parties seeking cancellation of the "KID DIRECTORY" mark, Wade and Better Together will have the burden of ultimately proving genericness.  *DVH Co., Inc.,* 2007 WL 3284324, at *3.  The court's task in considering the instant motion, however, is simply to determine whether they are entitled to offer evidence in support of their trademark cancellation claim, not whether they will ultimately prevail.  Wade and Better Together allege that: "[t]he phrase 'KIDS DIRECTORY' is generic for directories of goods and services directed to children, and cannot function as a trademark."  Orig. Answer, Counterclaim, and Cross-Claims 22, ¶ 55.  They further states that the "KIDS DIRECTORY" mark is "so weak that during one application it was determined by the United States Patent and Trademark Office to be a generic term and not protectable as a mark at all, or the effect of its inconsistent use across the country markets."  *Id.* ¶ 11.  These allegations state the ground on which Wade and Better Together seek cancellation of the

mark (genericness) and include a short summary of the factual basis for their cancellation claim. While not overly detailed, the allegations are sufficient at this stage to state a claim for trademark cancellation which, if true, may entitle it to the requested relief. The court therefore determines that dismissal of Wade's and Better Together's cancellation claim would be improper and **denies** HVI's motion on this ground.

## IV.    Amendment of Pleadings

Jessica Wade and Better Together have requested to amend their pleadings in the event the court determines that their pleadings are deficient. A plaintiff should be given the opportunity to amend its pleadings when it appears that more careful or detailed drafting may overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (A court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (A complaint should be dismissed under Rule 12(b)(6) only "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Wade and Better Together have not previously amended their pleadings. Amendment by Better Together of its claims for DTPA violations, fraud, negligent misrepresentation, money had and received, conspiracy, and alter ego would be futile and will therefore not be allowed. The court, however, will permit Wade to file an amended pleading that addresses the deficiencies noted with regard to her claims for DTPA violations, fraud, negligent misrepresentation, conspiracy, and alter ego, since it appears that such deficiencies can be cured.

**Memorandum Opinion and Order – Page 21**

V.      **Conclusion**

For the reasons herein stated, the court **grants in part and denies in part** HVI's and the Croffords' Motion to Dismiss Counts I, II, III, V, VI, VII, and VIII of the Defendants' Counterclaim.

The court **grants** and **dismisses with prejudice** HVI's and the Croffords' Motion to Dismiss Better Together's claims for DTPA violations, fraud, negligent misrepresentation, money had and received, conspiracy, and alter ego.  Subject to Wade curing the deficiencies noted in this memorandum opinion and order, the court **denies without prejudice** HVI's and the Croffords' Motion to Dismiss Wade's claims for DTPA violations, fraud, negligent misrepresentation, conspiracy, and alter ego. The court also **denies without prejudice** HVI's and the Croffords' Motion to Dismiss Wade's and Better Together's claim for trademark cancellation.

Wade is **directed** to file an amended pleading that addresses the deficiencies noted in this memorandum opinion and order with regard to her claims for DTPA violations, fraud, negligent misrepresentation, conspiracy, and alter ego by **June 11, 2012.**  The court further **directs** Wade to file a response to the court's *sua sponte* motion to dismiss her claims based on FTCA violations, and money had and received by **May 29, 2012.**  Better Together is **directed** to file a response to the court's *sua sponte* motion to dismiss its declaratory judgment claim by **May 29, 2012.**  HVI is directed **not** to file a reply brief unless ordered to do so by the court.  Failure to replead and respond to the court's *sua sponte* motion as directed subjects these claims to dismissal for failure to state a claim upon which relief can be granted or for failure to comply with a court order pursuant to Rule 12(b)(6) or Rule 41(b) of the Federal Rules of Civil Procedure.

**It is so ordered** this 18th day of May, 2012.

Sam A. Lindsay
United States District Judge